**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

In re:                                                      :

                                                            :   Chapter 7

TYLA MONET MAZYCK,                                           :

                                                            :   Case No. 25-12652 (MEW)

                Debtor.                                :

------------------------------------------------------------------x

YERILEE ATKINSON VÉLEZ,                                      :

                                                            :

                Plaintiff,                             :

                                                            :

          v.                                          :   Adv. Pro. No. 26-01007 (MEW)

                                                            :

TYLA MONET MAZYCK,                                           :

                                                            :

                Defendant.                             :

------------------------------------------------------------------x

## ORDER AND DECISION DISMISSING COMPLAINT, WITHOUT PREJUDICE

On February 2, 2026, Plaintiff Yerilee Atkinson Vélez filed this adversary proceeding seeking a determination that certain alleged debts owed to her by the Defendant and Debtor, Tyla Monet Mazyck, should be excepted from discharge pursuant to sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code. (Adv. ECF No. 1, the "Complaint").  On March 2, 2026, Defendant filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) (made applicable by Federal Rule of Bankruptcy Procedure 7012).  (Adv. ECF No. 9.) Plaintiff filed an opposition on March 19, 2026 (Adv. ECF No. 15), and Defendant filed a reply (Adv. ECF No. 16).  The Court held a status conference on April 23, 2026 at which it heard argument from both parties, each of whom is proceeding *pro se*[1].

---

[1] The Court notes that several of the case citations in Defendant's Motion to Dismiss appear to be inaccurate or fabricated (often, termed "AI hallucinations"), and Defendant is reminded that she is responsible for ensuring that any citations she presents to the Court should be to decisions that actually exist and that any quotations should be of text that actually appears in real court decisions/opinions/rulings/orders.

For the reasons stated on the record at the April 23, 2026 hearing, and as set forth further below, the Motion to Dismiss is **GRANTED**, and the Complaint is dismissed, without prejudice to the filing of an amended complaint within 45 days of the date of this Order.

## I.    The Allegations of the Complaint

The Complaint arises out of a residential co-tenancy.  Plaintiff alleges that in or about May 2024 she and Defendant jointly executed a lease for an apartment in the Bronx, and that the parties had agreed, before executing the lease, that Defendant would be responsible for $1,702.96 of the monthly rent.  Plaintiff alleges that Defendant represented that she was employed and able to pay that share, but that Defendant was in fact facing eviction from her prior residence and was not financially able to perform.  Plaintiff further alleges that throughout the eleven-month tenancy, Defendant never paid her full share of rent in any month; that her payments ranged from roughly $400 to $1,500, with a single lump-sum payment of $4,900 made in March 2025 after repeated demands; and that Plaintiff was compelled to cover Defendant's shortfalls to avoid eviction.  Plaintiff also alleges that Defendant vacated the apartment on March 29, 2025; that Defendant promised to locate a replacement tenant by approximately May 1, 2025 but failed to do so; that Defendant later executed a retroactive release from the lease without Plaintiff's knowledge or consent; and that Defendant has been obstructive in various respects both before and during the bankruptcy case.

### A.    The First Cause of Action

The First Cause of Action is asserted under Section 523(a)(2)(A) of the Bankruptcy Code.  Plaintiff alleges that Defendant obtained housing and an ongoing financial benefit from Plaintiff through "material misrepresentations, omissions, and concealment of her financial

instability and inability to perform." (Compl. ¶ 44.)  The essence of the claim is that, at the time

of lease inception and throughout the tenancy, Defendant knew or was recklessly indifferent to

the fact that she lacked the financial ability and the intent to perform her share of the rent

obligation, and that she concealed from Plaintiff both her prior eviction risk and her financial

distress.  Plaintiff alleges that she reasonably relied on Defendant's representations and conduct

in entering and remaining in the lease and in covering Defendant's shortfalls, and that

Defendant's conduct constitutes false pretenses, false representations, and actual fraud within the

meaning of Section 523(a)(2)(A).  (*Id.* ¶¶ 43–49.)

### B.      The Second Cause of Action

The Second Cause of Action is asserted under Section 523(a)(6) of the Bankruptcy Code.

Plaintiff alleges that Defendant engaged in a "continuous and deliberate course of conduct

consisting of repeated nonpayment of rent, concealment of financial instability, abandonment

without notice, and procedural obstruction of Plaintiff's efforts to obtain repayment," and that

Defendant knew or was substantially certain that this course of conduct would cause Plaintiff

significant financial injury.  (Compl. ¶¶ 51–52.)  Plaintiff alleges that Defendant's conduct was

willful because she intentionally entered into and remained in the lease while knowingly failing

to perform, and that it was malicious because it was undertaken without just cause or excuse and

in conscious disregard of Plaintiff's rights, resulting in exposure to eviction, damage to

Plaintiff's credit, and substantial out-of-pocket losses.  (*Id.* ¶¶ 53–56.)

## II.     The Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  The Court accepts well-pleaded factual allegations as true and draws all reasonable

inferences in the plaintiff's favor, but it is not required to credit "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

A complaint asserting fraud must also satisfy the heightened pleading requirements of Rule 9(b),

made applicable here by Federal Rule of Bankruptcy Procedure 7009, which requires the

plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b);

*see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Because the Plaintiff is

*pro se*, the Court construes the Complaint liberally and reads it to raise the strongest arguments it

suggests.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).

The exceptions to discharge "should be confined to those plainly expressed."

*Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998).  the exceptions to dischargeability also must be

construed to comport with the "fresh start" philosophy underlying the Bankruptcy Code.  *See*

*Kuper v. Spar (In re Spra)*, 176 B.R. 321, 326 (Bankr. S.D.N.Y. 1994) ("To meet the goals

intended under the Code, exceptions to discharge must be strictly and literally construed against

the creditor and liberally construed in favor of the honest debtor.").  The creditor bears the

burden of proving, by a preponderance of the evidence, that a debt falls within one of those

exceptions.  *See Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citing *Grogan v.*

*Garner*, 498 U.S. 279, 287 (1991)).

## III.    The First Cause of Action Fails To State a Claim

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an

extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false

representation, or actual fraud, *other than a statement respecting the debtor's or an insider's*

*financial condition*." 11 U.S.C. § 523(a)(2)(A) (emphasis added).  Statements "respecting the

debtor's . . . financial condition" are actionable *only* under 11 U.S.C. § 523(a)(2)(B), and only if the statement is "in writing," "materially false," made or published "with intent to deceive," and reasonably relied upon by the creditor. *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721 (2018) (generally explaining that subsection (a)(2)(B) imposes a writing requirement while subsection (a)(2)(A) for which there is no writing requirement, describes the more general categories of "fraud").

The First Cause of Action alleges that Defendant misrepresented or concealed her financial condition—that she represented she was employed and able to pay her share of the rent, that she failed to disclose her housing instability, her prior eviction risk, and her more general financial distress, and that she concealed her financial inability to perform. (Compl. ¶¶ 8–10, 44–45, 49.) Those are, by their nature, statements "respecting the debtor's . . . financial condition," and they are therefore outside the scope of section 523(a)(2)(A). They can support a nondischargeability claim only under Section 523(a)(2)(B), and only if made in writing. *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. at 714 (discussing that statements respecting a debtor's financial condition must be in writing). The Complaint does not identify any written statement of Defendant's financial condition, and so the contention that the Defendant should be denied a discharge, based on allegations that she misrepresented her financial condition, must be dismissed.

To the extent the Complaint seeks to allege fraud based on something other than Defendant's statements about her financial condition, the allegations still do not state a claim. Section 523(a)(2)(A) incorporates the elements of common-law fraud, including the requirement of a false representation made with the intent to deceive. *See Field v. Mans*, 516 U.S. 59, 69–70 (1995). Stripped to its core, Plaintiff's theory is that Defendant made a contractual promise to

pay her share of the rent at a time when she did not intend to keep it or did not have the ability to keep it. Although the Restatement of Torts and some jurisdictions recognize that the making of a contractual promise carries with it an implied representation of present intent to perform, and that a false implied representation of that kind can support a fraud claim, New York does not follow that rule. Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated," *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) (determining that a fraud claim cannot be a dressed-up version of allegations of simple contract violations (citations omitted)), and "[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support" a claim of fraud, *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995). Something more is required—either a legal duty separate from the duty to perform the contract, or a fraudulent misrepresentation collateral or extraneous to the contract itself. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (applying New York law); *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986). The allegation that a debtor entered into a contractual relationship with an undisclosed intent not to perform it, without more, is insufficient to state a claim of fraud and does not state a claim under Section 523(a)(2)(A).

Plaintiff also points to a representation, made by Defendant shortly before she vacated in late March 2025, that she would locate a replacement tenant by approximately May 1, 2025. (Compl. ¶ 28.) At the hearing, I asked Plaintiff what specifically was said, why Plaintiff believes the statement was false when it was made, and what injury flowed from the statement itself. The Complaint does not answer any of those questions. It does not allege that Defendant had no intention of trying to find a replacement tenant when she made the statement, or that she had

6

already arranged her affairs in a way that made performance impossible; it alleges only that no replacement tenant was ultimately secured. That is, once again, nonperformance of a promise, not a fraudulent misrepresentation. The Complaint also fails to identify any specific injury that followed from Plaintiff's reliance on the statement, as distinct from the injury Plaintiff had already sustained from Defendant's prior nonpayment.

Finally, to the extent the Complaint sounds like fraud by omission (*i.e.,* the alleged failure to disclose problems with prior landlords), Plaintiff has not identified any source of a duty on Defendant's part to disclose her prior housing history to Plaintiff as a prospective co-tenant. Plaintiff has not alleged any fiduciary or confidential relationship between the parties that would give rise to a duty of affirmative disclosure. *Cf. Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150–52 (2d Cir. 1993) (discussing circumstances under which a duty to disclose may arise). It is true that an omission may support a claim of misrepresentation if a defendant made partial or incomplete statements and if, in light of those statements, the failure to disclose other facts made the statements misleading. But the Complaint does not identify any statements at all that the Defendant allegedly made about her prior landlord or about the reasons she was looking for a new apartment.

For these reasons, the First Cause of Action fails to state a claim and must be dismissed.

## IV.    The Second Cause of Action Fails To State a Claim

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The Supreme Court has held that the word "willful" in that provision "modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. at 61. In the

7

Second Circuit, that means the creditor must show that the debtor either acted with the subjective intent to cause injury or acted with the subjective belief that injury was substantially certain to result. *See Ball v. A.O. Smith Corp.*, 451 F.3d at 69. "Malice" is a separate requirement: the Second Circuit has defined malicious conduct in this context as conduct that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996).

Those requirements are demanding, and they have a particular consequence for cases arising out of contractual disputes. A knowing breach of contract is not, without more, a willful and malicious injury for purposes of Section 523(a)(6). The Supreme Court in *Kawaauhau* expressly rejected a reading of the statute broad enough to reach a "knowing breach of contract." 523 U.S. at 62. If it were otherwise, virtually every contract breach would become nondischargeable, because most contract breaches are committed with at least some awareness that the nonbreaching party will suffer financial loss. *See id.* ("[a] construction so broad would be incompatible with the 'well-known' guide that exceptions to discharge 'should be confined to those plainly expressed.'" (internal citations omitted)).

To bring a contract-based claim within Section 523(a)(6), the creditor must plead conduct that amounts to a tort independent of the breach of contract – that is, conduct that is tortious in its own right and that was undertaken with the intent to injure, or with a substantial certainty of injury. The Complaint does not do so. The "course of conduct" that the Complaint identifies consists of (i) repeated nonpayment of Defendant's share of the rent, (ii) alleged concealment of her financial instability, (iii) abandonment of the apartment without meaningful notice, and (iv) procedural obstruction of Plaintiff's efforts to obtain repayment, including the filing of a family-court temporary restraining order and the execution of a retroactive lease release. (Compl. ¶ 51.)

8

The first item is a contract breach. The second, for the reasons explained above, is not actionable fraud on these allegations and therefore cannot supply the independent tortious conduct that Section 523(a)(6) requires. The third alleged conduct is again an alleged breach of a contractual relationship. And the fourth—although Plaintiff clearly finds Defendant's litigation conduct frustrating, and although some of the conduct may well be improper in other respects—does not, as pleaded, amount to an intentional tort committed with the intent to injure Plaintiff, or with substantial certainty that injury would result.

At the hearing, the Court pressed Plaintiff as to what it was in Defendant's conduct that allegedly was "malicious." Plaintiff's answer was, in substance, that Defendant did not communicate, made things difficult for Plaintiff, and thereby caused harm. But causing harm is not enough, and being "unreasonable" is not enough. The "malicious" infliction of injury under Section 523(a)(6) requires something more. As courts in this Circuit have explained, "a knowing breach of contract generally does not satisfy the malicious element of § 523(a)(6) absent some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the 'fresh start' to which the 'honest but unfortunate' debtor would normally be entitled under the Bankruptcy Code." *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (internal quotation marks omitted); *see also In re Luppino*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998). The Complaint does not plead aggravating circumstances of that character.

The Second Cause of Action therefore also fails to state a claim.

## V.      Leave To Amend

The Complaint is dismissed, but the dismissal is without prejudice. Plaintiff is proceeding *pro se*, and it is possible that the deficiencies identified above can be cured by more specific

9

allegations—for example, allegations identifying any *written* statement of Defendant's financial condition that Plaintiff contends was materially false, or allegations identifying a specific false statement made at a specific time, by a specific means, that is separate from the contractual promise to pay rent and that caused a specific, identifiable injury. The Court expresses no view on whether Plaintiff can in fact plead such allegations consistent with Rule 11. Plaintiff is cautioned that any amended complaint must satisfy the pleading standards discussed above, including the particularity requirement of Rule 9(b), and should not simply repeat the allegations of the current Complaint.

Based on the foregoing, it is hereby:

**ORDERED**, that the Motion to Dismiss is **GRANTED**; and it is further

**ORDERED**, that the Complaint is dismissed, without prejudice to the filing of an amended complaint within 45 days of the date of entry of this Order.

Dated: New York, New York
April 27, 2026

> **s/Michael E. Wiles**
> **HONORABLE MICHAEL E. WILES**
> **UNITED STATES BANKRUPTCY JUDGE**